CHAD A. READLER
Acting Assistant Attorney General
GUSTAV W. EYLER
Acting Director
Consumer Protection Branch
DOUGLAS ROSS
Trial Attorney
Consumer Protection Branch
U.S. Dept. of Justice
450 Fifth Street, N.W., 6th Floor South
Washington, DC 200017
Telephone: (202) 532-4663
Facsimile: (202) 514-8742
E-mail: Douglas.Ross2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> INNOVATIVE BIODEFENSE, INC., a corporation, and COLETTE COZEAN, an individual, <br><br> Defendants. | No. CV XXXXXXXX <br><br> COMPLAINT FOR PERMANENT INJUNCTION |

Plaintiff, the United States of America, by its undersigned attorneys, respectfully represents to this Court as follows:

1. This statutory injunction proceeding is brought under the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to permanently enjoin and restrain Innovative BioDefense, Inc., a corporation, and Colette Cozean, an individual (collectively, "Defendants") from:

///

1

   A. Violating 21 U.S.C. § 331(d), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs that are neither approved pursuant to 21 U.S.C. § 355(b) or (j), nor exempt from approval pursuant to 21 U.S.C. § 355(i); and

   B. Violating 21 U.S.C. § 331(a), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are misbranded within the meaning of 21 U.S.C. § 352(a).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter and all parties to this action pursuant to 21 U.S.C. § 332(a) and 28 U.S.C. §§ 1331 and 1345.

3. Venue in this District is proper under 28 U.S.C. §§ 1391(b) and (c).

## DEFENDANTS

4. Defendant Innovative BioDefense, Inc. ("Innovative BioDefense" or "the firm") is a corporation incorporated and registered to do business in California. The firm operates at its principal place of business at 21581 Midcrest Drive, Lake Forest, California, within the jurisdiction of this Court.

5. Innovative BioDefense manufactures, processes, packs, labels, holds, and distributes, through third-party contractors, a family of over-the-counter ("OTC"), topical drug products under the name Zylast, which includes but is not limited to: Zylast Broad Spectrum Antimicrobial Antiseptic, Zylast XP (Extended Protection) Antiseptic Lotion, and Zylast XP (Extended Protection) Antiseptic Foaming Soap (collectively, "Zylast products").

6. Defendant Colette Cozean is the firm's President and Chief Executive Officer. She is responsible for, and has authority over, all operations at the firm, and has the authority and duty to prevent, detect, and correct objectionable conditions at the firm. She performs her duties at 21581 Midcrest Drive, Lake Forest, California, within the jurisdiction of this Court.

///

## DEFENDANTS' OPERATIONS

7. Defendants cause the distribution of their Zylast products to customers outside of California.

8. Defendants operate the website www.zylast.com, which lists Innovative BioDefense's contact information under the hyperlink "Contact" and which includes the text "© 2015 Innovative BioDefense, Inc."

9. The physical labels on the Zylast products bear the text, "Manufactured for Innovative Biodefense Inc. . . . www.zylast.com." By clicking on a "Buy Now" icon at www.zylast.com, customers are taken to www.zylastdirect.com, where they can purchase the Zylast products.

10. The websites www.zylast.com and www.zylastdirect.com are hyperlinked to the Facebook page https://www.facebook.com/ZylastXP. In addition, www.zylastdirect.com is hyperlinked to the Twitter feed https://twitter.com/ZylastXP.

## REQUIREMENTS OF THE ACT

11. A product is a drug within the meaning of the Act if, among other things, it is "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," 21 U.S.C. § 321(g)(1)(B).

12. The intended use of a product "refer[s] to the objective intent of the persons legally responsible for the labeling of drugs" and may be determined from any relevant source, including the circumstances surrounding the distribution of the article, product labeling, advertising, promotional material, or oral or written statements by such persons or their representatives. *See* 21 C.F.R. § 201.128.

13. The Act defines labeling as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). The term "accompanying" in the second clause of 21 U.S.C. § 321(m) is not restricted to labels that are on or in the article at issue; physical attachment to the article is not necessary. *See Kordel v. United States*, 335 U.S. 345, 349-50 (1948). It is the textual relationship and integrated nature of the transaction

that is significant. *See id.* at 350.

14. The Act prohibits, subject to the exception described in Paragraph 16 below, doing or causing the introduction or delivery for introduction into interstate commerce of any new drug unless FDA has approved a new drug application ("NDA") or an abbreviated new drug application ("ANDA") with respect to such drug, or such drug is exempt from approval under an investigational new drug application ("IND"). 21 U.S.C. §§ 331(d) and 355(a), (b), (i), and (j). It is a violation of the Act to introduce or deliver, or cause to be introduced or delivered, into interstate commerce a new drug that is neither approved nor exempt from approval. 21 U.S.C. § 331(d).

15. A "new drug" is defined as any drug "the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof . . . . ; or any drug . . . the composition of which is such that such drug, as a result of investigations to determine its safety and effectiveness for use under such conditions, has become so recognized, but which has not, otherwise than in such investigations, been used to a material extent or for a material time under such conditions." 21 U.S.C. § 321(p).

16. FDA has established and published regulations, called "monographs," that describe certain categories of OTC drugs. OTC drugs manufactured and labeled in strict conformance with final monographs are deemed to be "generally recognized as safe and effective" ("GRAS/E"), 21 C.F.R. § 330.1, and can be marketed without FDA's premarket approval. Drugs that do not strictly conform to each of the conditions contained in an applicable final monograph, however, are subject to the new drug provisions of the Act. 21 C.F.R. § 330.10(b).

17. The Act also prohibits doing or causing the introduction or delivery for introduction into interstate commerce of any drug that is misbranded. 21 U.S.C. § 331(a).

18. A drug is misbranded within the meaning of 21 U.S.C. § 352(a) if its labeling is false or misleading in any particular.

## DEFENDANTS' VIOLATIONS OF THE ACT

### Unapproved New Drugs

19. The Zylast products are drugs within the meaning of the Act because they are intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man. According to the Zylast products' labeling, including information and hyperlinks on www.zylast.com and www.zylastdirect.com, and the Facebook and Twitter pages referenced in paragraph 10, the Zylast products are intended to be used as topical antiseptics that are effective against the stomach flu and the common cold, and against infection by pathogens that include, but are not limited to, norovirus, rhinovirus, rotavirus, flu virus, Methicillin-Resistant Staphylococcus Aureus bacteria, and/or Ebola virus. In addition, as late as June 19, 2017, the Zylast products' labeling also contained claims that they were effective against H1N1, HIV, herpes, and Vancomycin-resistant enterococci bacteria.

20. Defendants' Zylast products are not GRAS/E for their intended uses because there are no published adequate and well-controlled clinical studies demonstrating that Defendants' Zylast products are generally recognized as safe and effective for their intended uses, nor are they the subjects of safety investigations resulting in such recognition, nor have they been used for a material extent or time under such conditions. Therefore, the Zylast products are new drugs within the meaning of 21 U.S.C. § 321(p).

21. Defendants' Zylast products also do not conform to any applicable final OTC monograph and, accordingly, are subject to the new drug provisions of the Act, including the provisions requiring premarket approval.

22. Defendants' Zylast products lack an approved NDA or an approved ANDA as required by 21 U.S.C. § 355(b) or (j), respectively, and are not exempt from approval pursuant to an effective IND under 21 U.S.C. § 355(i).

23. Defendants violate 21 U.S.C. § 331(d) by introducing or delivering, or causing introduction or delivery, into interstate commerce of new drugs that do not have approved NDAs or ANDAs and do not qualify for exemptions pursuant to effective INDs.

## Misbranded Drugs

24. The Zylast products' labeling, http://www.zylastdirect.com/safety, contains the following statement: "Zylast have [sic] an unmatched safety profile. The active ingredient in Zylast, BZT . . . is even considered safe and effective in open wounds by the FDA." In addition, the Zylast products' labeling, http://www.zylastdirect.com/compare, contains the following statement: "Zylast Has an Unmatched Safety Profile . . . the active ingredient in Zylast, BZT, . . . is considered safe and effective for first aid in concentrations of 0.1-0.2% by the FDA." FDA has not, however, issued a final rule recognizing BZT (benzethonium chloride) as safe and effective for first-aid use in any concentration or to treat open wounds. Nor has FDA issued a final rule recognizing BZT to be safe and effective as an active ingredient in a no-rinse, leave-on antiseptic lotion with intended uses such as those of Zylast XP (Extended Protection) Antiseptic Lotion, or as an active ingredient in an antiseptic wash with intended uses such as those of Zylast XP Antiseptic Foaming Soap. Thus, the above-listed statements are false and misleading and Zylast XP (Extended Protection) Antiseptic Lotion and Zylast XP Antiseptic Foaming Soap, which contain BZT as an active ingredient, are misbranded within the meaning of 21 U.S.C. § 352(a).

25. Defendants violate 21 U.S.C. § 331(a), by introducing or delivering, or causing the introduction or delivery, into interstate commerce of Zylast XP (Extended Protection) Antiseptic Lotion and Zylast XP Antiseptic Foaming Soap, which are misbranded drugs within the meaning of 21 U.S.C. § 352(a).

## Interstate Commerce

26. Defendants cause the distribution of their Zylast products nationwide. FDA has documented the shipment of Zylast products from California to Arizona. Such

shipment constitutes the introduction or delivery for introduction of unapproved new drugs and misbranded drugs into interstate commerce under 21 U.S.C. §§ 331(a) and (d).

## HISTORY OF VIOLATIONS

27. Defendants have repeatedly violated the Act and such noncompliance has continued in the face of repeated warnings from FDA that Defendants' conduct violates the law and that continued violations could lead to regulatory action.

28. In a June 30, 2015, Warning Letter to Defendants, FDA described Defendants' violations and notified Defendants that continued violations could lead to regulatory action, including an injunction.

29. Defendants responded in writing on July 6, 10, and 16, 2015. However, as FDA pointed out in a follow-up letter to Defendants dated August 12, 2015, Defendants' responses did not address the violations described in the Warning Letter.

30. In addition, FDA previously held a meeting with Defendants on March 31, 2015, and corresponded with Defendants by letter dated June 15, 2015, which informed Defendants of the agency's view on the legal status of their drug products and their obligation to comply with the Act's premarket approval requirement.

31. To date, Defendants have not filed an NDA, ANDA, or IND for the Zylast products and continue to cause the distribution of these unapproved new drugs and misbranded drugs in interstate commerce.

32. Accordingly, unless restrained by this Court, Defendants will continue to violate the Act, 21 U.S.C. §§ 331(a) and (d), in the manner set forth above.

WHEREFORE, the United States respectfully requests that the Court:

I. Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, from directly or indirectly doing or causing to be done any of the following acts:

///

        A.     Violating 21 U.S.C. § 331(d), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce unapproved new drugs; and

        B.     Violating 21 U.S.C. § 331(a), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are misbranded within the meaning of 21 U.S.C. § 352(a).

    II.     Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, and assigns, and any and all persons in active concert or participation with any of them, from directly or indirectly introducing or delivering for introduction, or causing to be introduced or delivered for introduction, into interstate commerce any drug, including but not limited to the Zylast products and any product labeled similarly to such products and containing the same active ingredients, unless and until:

        A.     An approved NDA, ANDA, or an IND application Defendants filed pursuant to 21 U.S.C. §§ 355(b), (j), or (i), is in effect for such drugs, or Defendants have removed all claims from their product labels, labeling, promotional materials, websites owned or controlled by or related to Defendants, and in any other media that cause any of Defendants' products to be a new drug within the meaning of the Act; and

        B.     Defendants have removed all claims from their product labels, labeling, promotional materials, websites owned or controlled by or related to Defendants, and in any other media that cause any of Defendants' products to be misbranded within the meaning of the Act.

    III.    Order that FDA be authorized to inspect Defendants' place(s) of business and all records relating to the receipt, manufacture, processing, packing, labeling, holding, and distribution of any of Defendants' products to ensure continuing compliance with the terms of the injunction, the costs of such inspections to be borne by Defendants at the rates prevailing at the time the inspections are accomplished.

    IV.    Grant judgment for Plaintiff's costs herein, and such other and further relief as the Court deems just and proper.

DATED this 6th day of June, 2018.

                                                Respectfully submitted,

Of Counsel:                            /s/ Douglas Ross_____
                                                DOUGLAS ROSS
ROBERT P. CHARROW          Trial Attorney
General Counsel                    Consumer Protection Branch
U.S. Dept. of Health & Human Services

REBECCA K. WOOD
Chief Counsel
Food and Drug Administration

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation

YEN P. HOANG
Associate Chief Counsel, Enforcement
U.S. Dept. of Health & Human Services
Office of the General Counsel
Food and Drug Division
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002
Tel: (240) 402-0484
Yen.Hoang@fda.hhs.gov